**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Law Offices of Todd M. Friedman, P.C.**
**21550 Oxnard St., Suite 780**
**Woodland Hills, CA 91367**
**Phone: 877-206-4741**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
*Attorneys for Plaintiff, WILSON GARRIDO, and all others similarly situated*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON GARRIDO, individually, and on behalf of other members of the general public similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>FITNESS INTERNATIONAL, LLC; FITNESS & SPORTS CLUBS, LLC; LAF CANADA COMPANY, and does 1-20,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>(1)  Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*)<br>(2)  Violation of Electronic Funds Transfer Act (15 U.S.C. §1693 *et seq.*)<br><br><br>**Jury Trial Demanded** |

Plaintiff WILSON GARRIDO ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this class action Complaint against Defendants FITNESS INTERNATIONAL, LLC; FITNESS & SPORTS CLUBS, LLC; LAF CANADA COMPANY dba L.A. FITNESS AND PRO RESULTS, to stop Defendants' practice of cheating consumers out of thousands of dollars each and to obtain redress for a nationwide class of consumers ("Class Members") who purchased, within the applicable statute of limitations period, the products from Defendants (hereinafter collectively referred to as the "Class Products"). Plaintiff is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

2.     Defendant FITNESS INTERNATIONAL, LLC is a California limited liability company and is engaged in the business owning and operating fitness and training facilities open to the public with its headquarters and principle place of business in California.

3.     Defendant FITNESS & SPORTS CLUBS, LLC is a Delaware limited liability company and is engaged in the business owning and operating fitness and training facilities open to the public with its headquarters and principle place of business in California.

4.     Defendant  LAF Canada Company is a Canadian Company and is engaged in the business owning and operating fitness and training facilities open to the public with its headquarters and principle place of business in Alberta, Canada.

5.     Defendants pressured consumers into signing agreements for yearlong gym memberships by misleading consumers into believing that they were only obtaining and obligated to pay for one month membership.

6.     Plaintiff and others similarly situated signed these agreements.

CLASS ACTION COMPLAINT

7.     Defendants would then proceed to take large amounts of money from Plaintiff and others similarly situated which these consumers did not authorize.

8.     Defendants misrepresented and falsely advertised to Plaintiff and others similarly situated the content of the agreements that Defendants pressured Plaintiff and others similarly situated to sign.

9.     Defendants' misrepresentations to Plaintiff and others similarly situated caused them to enter into agreements, which Plaintiff and others similarly situated would not have entered absent these misrepresentations by Defendants and its employees. In so doing, Defendants have violated California consumer protection statutes and stole hundreds of thousands, if not millions, of dollars.

## JURISDICTION AND VENUE

10.     This class action is brought pursuant to Federal Rule of Civil Procedure 23. All claims in this matter arise exclusively under California law.

11.     This matter is properly venued in the United States District Court for the Central District of California, because Defendant Fitness International, LLC has its headquarters and principal place of business in Irvine, California. Further, Defendant Fitness International, LLC is the parent company of Defendants Fitness & Sports Clubs, LLC and LAF Canada Company who also do a substantial portion of their business within this jurisdiction.

12.     There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any Defendants, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

CLASS ACTION COMPLAINT

13.     In the case at bar, there are at least 100 members in the proposed Class and Sub-classes, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks to represent a nationwide class of consumers, establishing minimum diversity.

## THE PARTIES

14.     Plaintiff WILSON GARRIDO is a citizen and resident of the State of New Jersey.

15.     Plaintiff alleges, on information and belief, that Defendants' marketing campaigns, as pertains to this matter, were created by Defendants in Irvine, California, and were disseminated from California, nationwide.

16.     Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendants' sales of memberships are governed by the controlling law in the state in which they do business and from which the sales or products and products, and the allegedly unlawful acts originated, which is New Jersey.

17.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendants and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of Defendants' employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendants.

18.     Plaintiff is informed and believes, and thereon alleges, that said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

19.     At all relevant times, Defendants ratified each and every act or

omission complained of herein. At all relevant times, Defendants, aided and abetted the acts and omissions as alleged herein.

## FACTUAL ALLEGATIONS

20.    Defendants' Sales Representative Chris Greco, using high pressure sales techniques on Plaintiff, persuaded Plaintiff to purchase eight sessions of personal training at fifty dollars each on a month to month basis at Defendants' East Brunswick, NJ location.. Defendants' Sales Representative informed Plaintiff that he could renew the month to month membership of eight sessions by prepaying the session before each month and that unused sessions would roll over to the next month.

21.    The Sales Representative then presented Plaintiff with a hand-held electronic device, and instructed Plaintiff to sign on the signature line which appeared on the screen. The screen showed only the signature line and was otherwise blank. Plaintiff was given a stylus which he used to sign precisely on the signature line, never rising above it, it in a completely level, horizontal manner.

22.    Prior to affixing his signature to the blank screen, Plaintiff was not presented with a written document stating any of the terms of his continued membership, which had been advertised to Plaintiff as a month to month plan.

23.    Plaintiff called his personal trainer and the facility and informed them that he was not going to continue using his remaining six sessions.

24.    Plaintiff did not then, nor ever, authorize Defendant to make an electronic withdrawal from his bank account in payment of the cost of the extra months of membership. Further, Defendant never signed a written authorization for Defendants to make any electronic withdrawals from his bank account.

25.    Notwithstanding payment of the $400.00 agreed upon cost of the one month membership, Defendants electronically debited Plaintiff's bank account $400.00 every other month.

26.    Plaintiff immediately contacted Defendants, disputed the automatic withdrawal and asked Defendants to reverse the withdrawal.

27.    Defendants responded that Plaintiff had signed a 12-week written agreement (the "Agreement") for a total amount of $4,800.00, which authorized the electronic withdrawal at the rate of $400.00 every month. In fact, Plaintiff had never seen this Agreement before, and had never signed it.

28.    Plaintiff never provided Defendants with any written or oral authorization to deduct money electronically from his bank account

29.    Plaintiff is informed and believes and on that basis alleges that Defendants transferred Plaintiff's signature on the blank hand-held device and affixed it to the multipage Agreement without Plaintiff's knowledge or consent.

30.    After the two sessions within the first month period, Plaintiff stopped using and never again used Defendants' facilities.

31.    Defendants continued to make monthly electronic withdrawals of $400.00 from Plaintiff's bank account, without Plaintiff's authorization.  Such unauthorized debits from Plaintiff's bank account by Defendant continued at least until at October of 2016.

32.    Over this period of time, Plaintiff continued to dispute the unpermitted electronic withdrawals and to seek reversals of the sums taken, but without success.

33.    Defendants never provided Plaintiff with a written or electronic document authorizing any of the recurring electronic withdrawals, and Plaintiff never signed any such authorization.

34.    Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

35.    At all relevant times, Plaintiff's membership to Defendants' physical

CLASS ACTION COMPLAINT

fitness and exercise facility was for the purposes of instruction, training, assistance in physical culture, body building, exercising and general physical health and well-being.

36.    Plaintiff was never provided a written agreement for services prior to affixing his signature to the blank electronic screen.

37.    Plaintiff was not provided with a written agreement at the time he signed the blank electronic screen.

38.    Plaintiff was not provided with a description of the services, facilities, and hours of access to which he would be entitled prior to the time he signed the blank electronic screen.

39.    Plaintiff was never informed in writing of the length and cost of the term of health care services prior to signing the blank electronic screen.

40.    Plaintiff was never informed of his right to cancel the agreement prior to signing the blank electronic screen.

41.    Plaintiff was never provided in writing with any notice of any terms of the agreement prior to signing the blank electronic screen.

42.    By their conduct as set forth above, Defendants intentionally appropriated, obtained, retained and deprived Plaintiff of his personal property of Plaintiff with the intent to defraud Plaintiff.

43.    At all relevant times, as set forth above, Defendants wrongfully took, appropriated, and obtained Plaintiff's personal property rights.

44.    At all relevant times, Defendants knew or should have known that their conduct set forth above was likely to be harmful to Plaintiff.

45.    When, Plaintiff told Defendants he wished to get eight sessions of personal training for a single month, Defendants falsely advertised to Plaintiff that he could sign up for a single month for $400. In fact, such a membership was not available to Plaintiff.

CLASS ACTION COMPLAINT

46.     Defendants falsely represented to Plaintiff that he would have no obligation to Defendants following the expiration of the single month membership. Defendant further falsely represented that Plaintiff would be required to pay only $400.00 for the extra month membership.

47.     When Defendants advertised the availability of the single month membership, Defendants had no intent so sell Plaintiff such a membership, but always intended to sell Plaintiff a 12 week membership at a higher price than was quoted to Plaintiff.

48.     At the time of the agreement, Defendants and its agents made various abiding representations to Plaintiff, including but not limited to promises that Plaintiff was only signing up for one month membership and was only obligated to pay for that one month.

49.     For this reason, Plaintiff was induced to and eventually decided upon signing an agreement with Defendants.

50.     However, despite the representations of Defendants, the agreement was for one year membership.

51.     Upon learning this, Plaintiff felt ripped off and cheated by Defendants.

52.     Such sales tactics rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

53.     Plaintiff is informed, believes, and thereupon alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase Defendants' memberships.

54.     In purchasing these memberships, Plaintiff relied upon Defendants' representations.

55.     Plaintiff would not have purchased the product if he knew that the above-referenced statements made by Defendants were false.

56.    Had Defendants properly marketed, advertised, and represented the true nature of these agreements Plaintiff would not have signed the agreement.

57.    Defendants benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

58.    At all relevant times, the conduct of Defendants as set forth herein has been willfully misleading, fraudulent, false and oppressive.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action, on behalf of himself and all others similarly situated, and thus, seeks class certification under Federal Rule of Civil Procedure 23.

60.    The class Plaintiff seeks to represent (the "Class") is defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

61.    As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

62.    Plaintiff also seeks to represent the subclass (the "New Jersey Class") as defined as follows:

> All persons in New Jersey whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

63.    As used herein, the term "California Class Members" shall mean and refer to the members of the California Class described above.

64.    Excluded from the Class and the New Jersey Class (collectively, the "Classes") are Defendants, its affiliates, employees, agents, and attorneys, and the Court.

65.    Plaintiff reserves the right to amend the Classes, and to add additional

CLASS ACTION COMPLAINT

subclasses, if discovery and further investigation reveals such action is warranted.

66.    Upon information and belief, the proposed Classes are each composed of thousands of persons. The members of the Classes are so numerous that joinder of all members would be unfeasible and impractical.

67.    No violations alleged in this complaint are contingent on any individualized interaction of any kind between members of the Classes and Defendants.

68.    Rather, there are common questions of law and fact as to the members of the Classes that predominate over questions affecting only individual members, including but not limited to:

   (a)    Whether Defendants engaged in unlawful, unfair, or deceptive business practices in selling gym memberships to Plaintiff and other members of the Classes;

   (b)    Whether Defendants made misrepresentations with respect to the gym memberships sold to consumers;

   (c)    Whether Defendants profited from the sale of the gym memberships;

   (d)    Whether Defendants violated N.J.S.A. 56:8-1 *et seq*.;

   (e)    Whether the members of the Classes entered into agreements with Defendants to have automatic, or recurring, electronic payments drawn from their personal accounts to be paid to Defendants;

   (f)    Whether Defendants requested, or provided, members of the Classes with written agreements memorializing the automatic or recurring electronic payments;

   (g)    Whether the members of the Classes provided either a written or electronic signature authorizing the automatic or recurring

electronic payments;

(h)    Whether the members of the Classes were provided with, or executed, written agreements memorializing the automatic or recurring electronic payments;

(i)    Whether Defendants took unauthorized payments from accounts of members of the Classes;

(j)    Whether Plaintiff and members of the Classes are entitled to equitable and/or injunctive relief;

(k)    Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and members of the Classes; and

(l)    The method of calculation and extent of damages for Plaintiff and members of the Classes.

69.    Plaintiff is a member of the classes he seeks to represent.

70.    The claims of Plaintiff are not only typical of all members of the Classes, they are identical.

71.    All claims of Plaintiff and the Classes are based on the exact same legal theories.

72.    Plaintiff has no interest antagonistic to, or in conflict with, the Classes.

73.    Plaintiff is qualified to, and will, fairly and adequately protect the interests of each member of the Classes, because Plaintiff signed an agreement with Defendants during the Class Period. Defendants' unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experiences. Plaintiff's claims are typical of all members of the Classes as demonstrated herein.

74.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent

CLASS ACTION COMPLAINT

himself and the Classes.

75.   Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION

## Violation of the Electronic Funds Transfer Act

## (15 U.S.C. 1693 *et seq.*)

## <u>On Behalf of the Class</u>

76.   Plaintiff incorporates by reference each allegation set forth above.

77.   Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

78.   Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

79.   Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p ]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

80.   Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

81.   In multiple instances, Defendants have debited the bank accounts of

1   Plaintiff and members of the Classes on a recurring basis without obtaining a

2   written authorization signed or similarly authenticated for preauthorized electronic

3   fund transfers from the accounts of Plaintiff members of the Classes, thereby

4   violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b)

5   of Regulation E, 12 C.F.R. § 205.l0(b).

6       82.   In multiple instances, Defendants have debited bank accounts of

7   Plaintiff and members of the Class on a recurring basis without providing a copy

8   of a written authorization signed or similarly authenticated by Plaintiff or the

9   putative Class members for preauthorized electronic fund transfers, thereby

10  violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b)

11  of Regulation E, 12 C.F.R. § 205.l0(b).

12  

**SECOND CAUSE OF ACTION**
**NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1 et seq.**
**On Behalf of the New Jersey Sub Class**

13

14      83.   Plaintiff incorporates all preceding paragraphs of this complaint as if

15  set forth fully herein.

16      84.   The New Jersey Consumer Fraud Act ("CFA") was enacted to

17  protect consumers against sharp and unconscionable commercial practices by

18  persons engaged in the sale of goods or services. See Marascio v. Campanella,

19  298 N.J. Super. 491, 500 (App. Div. 1997).

20      85.   The CFA is a remedial statute which the New Jersey Supreme Court

21  has repeatedly held must be construed liberally in favor of the consumer to

22  accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy,

23  182 N.J. 1, 11-12 (2004) (**"The Consumer Fraud Act is remedial legislation**

24  **that we construe liberally to accomplish its broad purpose of safeguarding**

25  **the public."**).

26      86.   With regard to the CFA, **"[t]he available legislative history**

27  **demonstrates that the Act was intended to be one of the strongest consumer**

28

protection laws in the nation." <u>New Mea Const. Corp. v. Harper</u>, 203 N.J. Super. 315, 319 (App. Div. 1986).

87.   For this reason, the **"history of the Act is one of constant expansion of consumer protection."**  <u>Kavky v. Herballife International of America</u>, 359 N.J. Super. 497, 504 (App. Div. 2003).

88.   The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** <u>Lemelledo v.  Beneficial Management Corp.</u>, 150 N.J. 255, 263 (1997).

89.   Specifically, <u>N.J.S.A</u>. 56:8-2 of the CFA prohibits **"unlawful practices,"** which are defined as:

> **"The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."**

90.   The catch-all term **"unconscionable commercial practice"** was added to the CFA by amendment in 1971 to ensure that the Act covered, <u>inter alia</u>, **"incomplete disclosures."**  <u>Skeer v. EMK Motors, Inc.</u>, 187 N.J. Super. 465, 472 (App. Div. 1982).

91.   In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. <u>See</u> <u>Cox v. Sears Roebuck & Co</u>., 138 N.J. 2, 18 (1994).

92.   In order to state a cause of action under the CFA, a plaintiff <u>does not</u> need to show reliance by the consumer. <u>See</u> <u>Varacallo v. Massachusetts Mut. Life Ins. Co</u>., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance <u>is not required</u> in suits under the CFA because liability results from

1  **"misrepresentations whether 'any person has in fact been misled, deceived**

2  **or damaged thereby'"**).

3       93.     Rather, the CFA requires merely a causal nexus between the false

4  statement and the purchase, not actual reliance. <u>See</u> <u>Lee v. Carter-Reed Co.,</u>

5  <u>L.L.C.</u>, 203 N.J. 496, 522 (2010) (**"causation under the CFA is not the**

6  **equivalent of reliance"**).

7       94.     As stated by the New Jersey Supreme Court in <u>Lee</u>, 203 N.J. at 528:

8  **"It bears repeating that the CFA does not require proof of**
   **reliance, but only a causal connection between the unlawful**

9  **practice and ascertainable loss."**

10      95.     By the acts alleged herein, Defendants have violated the CFA.

11      96.     Specifically, Defendants have made identical, false misstatements of

12 affirmative fact in regards to their monthly contracts sold in New Jersey, as

13 outlined previously.

14      97.     These statements were false when made and Defendants knew that

15 these statements were false when made.

16      98.     As a result of these false, written affirmative misstatements of

17 material fact, Plaintiffs and the SubClass have suffered an ascertainable loss of

18 money.

19      99.     Specifically, Plaintiffs and the members of the SubClass have been

20 deprived of the benefit of the promised bargain – a valid measure of "ascertainable

21 loss" under the CFA according to the New Jersey Supreme Court and New Jersey

22 Appellate Division – in that Plaintiff and the members of the New Jersey Sub-

23 Class received something less than what was represented by Defendants on the

24 Product's label.

## MISCELLANEOUS

25

26      100.    Plaintiff and members of the Classes allege that they have fully

27 complied with all contractual and other legal obligations and fully complied with

28

all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

101.   Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

102.   Plaintiff, on behalf of himself and the Classes, requests the following relief:

(a)   An order certifying the Classes and appointing Plaintiff as Representative of the Classes;

(b)   An order certifying the undersigned counsel as Class Counsel;

(c)   An order requiring Defendants, at their own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d)   An order requiring Defendants to engage in corrective advertising regarding the conduct discussed above;

(e)   Actual damages suffered by Plaintiff and members of the Classes as applicable or full restitution of all funds acquired from Plaintiff and members of the Classes from the sale of misbranded Class Products during the relevant class period;

(f)   Punitive damages, as allowable, in an amount determined by the Court or jury;

(g)   Any and all statutory enhanced damages;

(h)   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i)   Pre- and post-judgment interest; and

(j)   All other relief, general or special, legal and equitable, to which Plaintiff and members of the Classes may be justly entitled as deemed by the Court.

CLASS ACTION COMPLAINT

1

2    Dated: January 10, 2017       Respectfully submitted,

3                         LAW OFFICES OF TODD M. FRIEDMAN , PC

4

5                         By: /s Todd. M. Friedman

6                           TODD M. FRIEDMAN, ESQ.

7                          Attorney for Plaintiff WILSON

8                           GARRIDO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28